**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| ALEXANDER W. DERING, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:06-CV-00357-RWS |
| | : | |
| SERVICE EXPERTS | : | |
| ALLIANCE LLC, and | : | |
| SERVICE EXPERTS INC., | : | |
| | : | |
| Defendants. | : | |

---

|  |  |  |
|---|---|---|
| ANDY LEWIS HEATING & | : | |
| AIR CONDITIONING, LLC, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 1:06-CV-00358-RWS |
| v. | : | |
| | : | |
| PEACHTREE SERVICE | : | |
| EXPERTS, LLC, SERVICE | : | |
| EXPERTS ALLIANCE, LLC, | : | |
| and SERVICE EXPERTS INC., | : | |
| | : | |
| Defendants. | : | |

AO 72A
(Rev.8/82)

# ORDER

Before the Court are Plaintiff's Motion to Compel Compliance with Subpoenas [122], Defendants' Motion to Exclude the Opinions and Testimony of John D. Houser [130], Plaintiff's Motion to Strike Portions of Errata Sheet of Steven Michael Graham [138], Plaintiff's Motion for Leave to File Sur-Reply Brief in Further Opposition to Defendants' Motion for Summary Judgment [137], Defendants' Motion for Summary Judgment [191], and a Motion to Withdraw Alexander Jackson Simmons, Jr. as Attorney [195] in Case No. 1:06-CV-00357-RWS.  Also before the Court are Plaintiff's Motion to Compel Compliance with Subpoenas [118], Defendants' Motion to Exclude the Opinions and Testimony of John D. Houser [123], Plaintiff's Motion to Strike Portions of Errata Sheet of Steven Michael Graham [126], Plaintiff's Motion for Leave to File Sur-Reply Brief in Further Opposition to Defendants' Motion for Summary Judgment [176], Defendants' Motion for Summary Judgment [125], and Plaintiff's Motion to Withdraw Alexander Jackson Simmons, Jr. as

2

Attorney [180] in Case No. 1:06-CV-00358-RWS.  After reviewing the record, the Court enters the following Order.[1]

## Background[2]

These two related suits arise out of a dispute over the purchase/sale of Plaintiff Andy Lewis/Hobson Heating & Air LLC (ALHHAC) to Plaintiff Alexander W. Dering.  Plaintiffs have filed these suits against the Defendant sellers of the business Service Experts, Inc., Service Experts Alliance LLC, and Peachtree Service Experts LLC.  Plaintiffs take the position that the sale included ALHHAC's service and repair business.  Within ALHHAC, services and repairs were conducted under the trade name of "Service Experts of Atlanta."  Defendants contend that this portion of the business was carved out of the sale and reserved, and they have continued to conduct such service business.  Plaintiffs have brought claims based on several theories including breach of contract, tortious interference with business relations, and trademark

---

[1]Pursuant to its authority under Rule 42(a), the Court consolidates these two actions for the limited purpose of considering these motions.  See FED. R. CIV. P. 42(a).  Unless otherwise noted, the Court's record citations pertain to the filings in Case No.  1:06-CV-00357-RWS.

[2]The Court makes no findings with regard to any of the facts herein.  These facts have been gathered primarily from Plaintiffs' Complaint.

3

infringement.  Additionally, Defendants have asserted a cross-claim for breach of contract claiming that Plaintiffs have not yet paid certain fees due under the terms of the contract..

## Discussion

### I. Plaintiffs' Motion to Compel

In both cases, Plaintiffs have filed a motion to compel compliance with subpoenas served on Defendants' expert witness Mr. Mark Gallagher and on Duff & Phelps, the valuation and corporate finance firm of which Mr. Gallagher is a Managing Director.  (Dkt. No. [122].)  After Defendants filed Mr. Gallagher's expert report but prior to Mr. Gallagher's deposition, Plaintiffs served both Mr. Gallagher and his firm with subpoenas mandating the production of documents related to Mr. Gallagher's previous reports on lost profits and his means of calculating lost profits.  The subpoenas were served on June 26, 2007, and they seek essentially the same documents from Duff & Phelps and from Mr. Gallagher.

Mr. Gallagher's only response to the subpoena was a letter stating: "Mark Gallagher does not retain documents relating to prior litigation engagements. As well, documents related to current engagements are under protective order

and therefore cannot be released to you." (Burnat Aff. [123], Ex. C).  Upon

receipt of the subpoena, Duff & Phelps obtained an extension of time from

Plaintiffs to respond and/or object to the subpoena until July 13, 2007.  On July

12, 2007, Duff & Phelps served responses and objections to Plaintiffs'

subpoenas and served on Plaintiffs non-privileged documents responsive to the

subpoenas.[3]

 Plaintiffs argue that because Mr. Gallagher did not file any objections to

the subpoena, it should be enforced against him.  While Mr. Gallagher's

response to the subpoena that he did not retain documents that were responsive

to the subpoena may have been technically correct, it ignores the obligation that

the recipient of a subpoena has to produce not only documents in his actual

possession, but also those over which he has custody or control.  Fed. R. Civ. P.

45(a)(1)(C).  Because Mr. Gallagher is a Managing Director of Duff & Phelps

it is reasonable to assume that he exercises some control over the documents in

question.  However,  he had knowledge of the position taken by his employer

---

[3]In the original brief, Plaintiffs assert that Duff & Phelps and Mr. Gallagher
waived objections by not timely responding to the subpoenas.  In the Reply Brief
[141], Plaintiffs acknowledge that Duff & Phelps' objection was timely pursuant to
the agreed extension, but assert that Gallagher did waive objections.  (Reply Brief at
2, n. 1).

concerning the subpoenas.  In fact, the response to the Motion to Compel is a

joint response from Gallagher and Duff & Phelps.  Although his individual

response was not as procedurally precise as it should have been, the Court finds

that his actions do not waive the protections to which Duff & Phelps is entitled

for its documents.  Plaintiffs suffer no prejudice from this conclusion.  The

response of Duff & Phelps put Plaintiffs on notice of the issues, and Plaintiffs

have had a full opportunity to brief those issues.

In its response to the Motion to Compel, Duff & Phelps asserts that any

probative value of the requested documents is substantially outweighed by the

burden that production would place on it.  Many of the documents are covered

by protective orders from other litigation and would require Duff & Phelps to

expend substantial time to assure compliance with those orders before

disclosing the documents.  Further, Duff & Phelps asserts that the requested

documents exceed the scope of discovery to which Plaintiffs are entitled.

Addressing the latter argument, the scope of subpoenas for production of

documents pursuant to Rule 45 "is the same as the scope of discovery under

Rule 26(b) and Rule 34."  <u>Commissariat A L'Energie Atomique v. Samsung</u>

<u>Elec. Co., Ltd.</u>, No. 8:06-mc-44-T-30TBM, 2006 WL 5003562, at *2 (M.D. Fla.

June 14, 2006).  Duff & Phelps adopts Defendants' argument that Plaintiffs' discovery should be limited to "a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years" as required by Rule 26(a)(2)(C).  (Def.'s Response at 4-5).  Defendants rely upon authorities from other jurisdictions for their position that a party is not entitled to discover reports from other cases from an expert.  <u>Surles v. Air France</u>, 2001 U.S. Dist. LEXIS 10048, at *19 (S.D. N..Y. July 19, 2001) (a party is not entitled to the disclosure of reports in other cases, "only the production of a <u>list</u> of the expert's cases" is required); <u>Trunk v. Midwest Rubber and Supply Co.</u>, 175 F.R.D. 664 (D. Col. 1997) ( holding "that conclusions and opinions offered in unrelated litigation do not fall within the scope of Rule 26 discovery").  The Court has not found, nor have the parties cited, any Eleventh Circuit authority concurring with <u>Surles</u>.  The Court  is not convinced that a blanket prohibition of discovery of other opinions of an expert is appropriate.  <u>See</u> <u>Phillips v. Raymond Corp.</u>, 213 F.R.D. 521, 524 (N.D. Ill. 2003) (holding that a party "was entitled to obtain chapter and verse of [expert's] prior expressions of opinion about other forklifts and about other injuries sustained by their operators").  There may be instances when a request

7

such as that made by Plaintiffs would be appropriate.  The Court concludes that the traditional balancing of the probative value to Plaintiffs against the burden placed upon the responding party is the appropriate way to resolve the issue.

Full compliance with the subpoenas would place a significant burden upon Duff & Phelps and their clients.  Forty-three reports are in issue.  All of the reports are governed by confidentially agreements, and thirty-one are subject to protective orders.  (Gallagher Dec. [129] at ¶¶ 8 & 9).  Plaintiffs' stated purpose for requesting the reports is: "Because Mr. Gallagher attacked the methodology of Plaintiffs' expert, it is wholly relevant to the case whether Mr. Gallagher has previously used the methodology of Plaintiffs' expert to calculate lost profits."  (Pl.'s Brief [122] at 6).  Mr. Gallagher states that  in the forty-three cases in which he has prepared expert reports, he has never used the methodology used by Plaintiffs' expert in this case.  (Gallagher Dec. at ¶¶ 5 & 6).  The Court finds that the burden that would be placed on Duff & Phelps greatly outweighs the limited probative value that these reports might have.  Therefore, Plaintiffs' Motion to Compel Compliance with Subpoenas is hereby **DENIED**.

**II. Plaintiff's Motion to Strike**

In both cases, Plaintiffs move to strike certain portions of deponent Steven Michael Graham's errata sheet.  (Dkt. No. [138].)  Plaintiffs allege that in two instances Mr. Graham's errata sheet makes substantive changes to his deposition testimony.  Defendants counter that Mr. Graham merely submitted clarifications to his original testimony.   Federal Rule of Civil Procedure 30(e) provides:

> If requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement citing such changes and the reasons given by the deponent for making them.

The first entry on the errata sheet which Plaintiffs seek to strike relates to the following testimony given at the deposition:

Q:     And you never heard anything more than that about why the Shumates got the business and you didn't?

A:     **I heard some other things, but it was on the periphery and it was they said, you said.  And so, no I don't think-**

Q.     Well, you heard something from somebody other than it was just easier, they were already there right?

A.     (Witness nods head)

9

> Q.    Do you remember who you heard those things from?
>
> A.    No, sir.
>
> Q.    Do you remember what they were?
>
> A.    Just it was easier to do business with them.

(Graham Dep. at 26-27) (emphasis added).  In his errata sheet, Graham requests that the answer highlighted above be changed to read: "I heard that Harold Shumate said he would not allow the company he had built after 30, 40, or 50 years to be sold to that asshole Al Dering" and stated that the reason for the change was: "Clarify.  I was instructed to be brief."  (Id. at 195).

The second instance involves the following deposition testimony of Graham:

> Q.    Do you have an opinion as to whether or not there is anything that Mr. Dering could have and should have done differently to allow the Andy Lewis/Hobson business to perform better than it did?
>
> A.    Well, just as I could have done a better job, your client could have done a better job, there is plenty of things that Al could have done to do a better job.  I don't think I was prepared to make a Christmas list for you.
>
> Q.    Well, is there anything- you managed to come up with a couple of examples of things that you might have been able to do, and I'm just asking for Steve Graham's opinion,

AO 72A
(Rev.8/82)

> looking back on it now, what might Mr. Dering have been
> able to do, in your view?

A.    I would have to think on that one.

(Graham Dep. at 186).  Graham attached to his errata sheet a two-page list of items that he believed Al Dering could have done differently to allow the business to perform better.

Relying primarily upon <u>Reynolds v. Int'l Business Machines Corp.</u>, 320 F. Supp. 2d 1290 (M.D. Fla. 2004), <u>aff'd</u>, 125 Fed.Appx.  982 (11th Cir. 2004), Plaintiffs urge the Court to strike the requested changes in the errata sheet because they make significant substantive changes to Graham's deposition testimony.  In <u>Reynolds</u>, the District Court held that a deponent cannot materially change his deposition testimony in his errata sheet.  Quoting the Tenth Circuit in <u>Burns v. Bd. of Co. Comms. of Jackson County</u>, 330 F.3d 1275, 1282 (10th Cir. 2003) the Court held that Rule 30(e)

> cannot be interpreted to allow one to alter what was said under
> oath.  If that were the case, one could merely answer the questions
> without no thought at all then return home and plan artful
> responses.  Depositions differ from interrogatories in that regard.
> A deposition is not a take home examination.

11

The Court also cited the Seventh Circuit in <u>Thorn v. Sundstrand Aerospace Corp.</u>, 207 F.3d 383, 389 (7th Cir. 2000): "A change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not.'" In <u>Reynolds</u>, Mr. Reynolds, the deponent, stated the reason for his change was that he was confused when questioned at his deposition.  After reviewing Reynolds' deposition testimony, the Court concluded that his answers did "not reflect any of his confusion that would justify the material alterations the errata sheet attempts to make to his original testimony."  The Court disregarded Reynolds' proposed changes.

Defendants urge the Court to recognize a more liberal view of Rule 30(e), citing a 2007 decision of the Middle District of Florida.  In <u>Liberty/Sanibel II Ltd. P'ship v. Gettys Group, Inc.</u>, No. 2:06-CV-16-FtM-29SPC, 2007 WL 1109274 (M.D. Fla. April 12, 2007), the District Court declined to follow <u>Reynolds</u>.  The Court noted that the affirmance of <u>Reynolds</u> by the Eleventh Circuit was a non-published opinion and thus not binding precedent. <u>Liberty/Sanibel</u> at *1.  The Court found that Rule 30(e) specifically contemplates "changes in form or substance."  The Court permitted the

12

requested changes to the deposition but authorized the deposition to be reopened.  Id.

In a subsequent case from the Southern District of Georgia, the Court permitted the deponent to make substantive changes that contradicted her deposition testimony.  In Purdee v. Pilot Travel Centers, L.L.C., No. CV407-028, 2007 W.L. 3143716, at *1 (S.D. Ga. Oct. 23, 2007), the Court also found Rule 30(e) "expressly allows changes in form or substance."  Acknowledging that "some courts have interpreted the rule as precluding substantive changes that actually contradict a witness's prior sworn testimony," the Court found that this view "represents the 'narrow' minority view."  Id.  The Court specifically reserved "the question of whether these errata alterations may be relied upon to create a material factual dispute at the summary judgment stage of litigation. While [deponent] is free to make substantive errata changes that contradict her prior deposition testimony, the Court is not necessarily precluded from disregarding such changes in deciding a motion for summary judgment."  Id. at *2, n. 2.

Based on the foregoing authorities, the Court finds that this issue is not settled in the Eleventh Circuit.  Under the specific circumstances of this case,

13

the Court concludes that Plaintiffs' Motion should be denied.  While the second proposed change by Graham presents a closer question, the Court finds that neither of the proposed changes contradicts the testimony at the deposition.  In the first instance, Graham testified that he had "heard some other things." When asked about the specific things that he had heard, he gave a very general response: "Just it was easier to do business with them."  The additional information provided in the errata sheet is not contradictory to that deposition testimony.  The statement in the errata sheet that is about Mr. Dering and is attributed to Mr. Shumate is consistent with Graham's testimony that purchasers were selected because "it was easier to do business with them."

As for the second incident, Graham specifically stated that there were "plenty of things that Al could have done to do a better job."  He stated that he was not "prepared to make a Christmas list for you."  (Graham Dep. at 186). When pressed for specifics, Graham stated "I would have to think on that one." (Id.).  Having apparently "thought on it," Graham, through his errata sheet, provides specifics.  This is not contradictory and is entirely consistent with his deposition testimony.

14

If the proposed changes clearly contradicted the deposition testimony, the changes may not be appropriate.  Because the Court finds that the changes are not contradictory, they will be allowed.  Therefore, the Court **DENIES** Plaintiffs' Motion to Strike [138].  However, the Court finds that Graham adds sufficient additional information to warrant his being subjected to further deposition.  Therefore, it is **ORDERED** that Graham's deposition be reopened so as to allow Plaintiffs to further question him concerning these matters.

## III. Defendants' Motion to Exclude

In both cases, Defendants have filed a motion to exclude the opinions and testimony of Mr. John D. Houser, Plaintiffs' expert witness on damages.  (See Dkt. No. [130].)  Mr. Houser calculated the lost profits of ALHHAC, the amount of unjust enrichment earned by Peachtree Service Experts, and the diminution in value of ALHHAC due to the alleged wrongful conduct of Defendants.  He also provided an opinion on the appropriate amount of punitive damages to award against Defendants.  Defendants contend that all of these opinions should be excluded as unreliable and irrelevant.

15

Federal Rule of Evidence 401 defines relevant evidence as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401.  Rule 402, in turn, provides that relevant evidence is generally admissible, but that "[e]vidence which is not relevant is not admissible." FED. R. EVID. 402.  Defendants argue that Mr. Houser's opinions are irrelevant and that they will not assist the trier of fact.

In the Eleventh Circuit, expert damages testimony is admissible under Federal Rule of Evidence 702 only if "(1) the expert is qualified to testify on the topic at issue, (2) the methodology used by the expert is sufficiently reliable, and (3) the testimony will assist the trier of fact." Club Car, Inc. V. Club Car (Quebec) Import, Inc., 362 F.3d 775, 780 (11th Cir. 2004).  Defendants argue that Mr. Houser's testimony fails to satisfy the second and third prongs of the Club Car test.

The Court now turns to the question of whether Mr. Houser's opinions are relevant and reliable.

## 1. Lost Profits and Unjust Enrichment

First, Houser calculated the lost profits of ALHHAC.  Houser projected Peachtree Service Experts' service revenues for 2005 based on its historical growth.  Then, he deducted the projected service revenues of Peachtree Service Experts from the actual service revenues of Peachtree Service Experts to calculate the projected 2005 ALHHAC service revenues.  He then multiplied this figure by the percentage of revenue that becomes income and determined that ALHHAC lost $352,841 in profits due to Defendants' conduct.  He calculated the lost profits in this way for a ten-year period to account for the continuing effects of Defendants' infringing conduct.  He then reduced those losses to present value to arrive at a figure representing Plaintiffs' total lost profits–$1,929,688.

Similarly, Mr. Houser calculated the unjust enrichment to Peachtree Service Experts and Service Experts, Inc. that resulted from the alleged wrongful conduct of Defendants.  He calculated Peachtree Service Experts' historical revenue growth and weighted average net income.  He projected Peachtree Service Experts' net income earned from ALHHAC's customer base

17

for a period of ten years.  This figure was reduced to present value, bringing the total amount of Defendants' unjust enrichment to $2,646,155.

Defendants claim that Mr. Houser's methodology is unreliable.  They argue that his calculations inappropriately assume that ALHHAC would have captured 100% of the former Service Experts of Atlanta's service business revenue.  They further argue that any attempt to predict the percentage of business revenue ALHAC, LLC would have actually captured would be speculative.  Defendants contend that because his opinions do not distinguish between damages caused by lawful and unlawful conduct, they are irrelevant and cannot aid the trier of fact in the correct calculation of damages.

However, Defendants have failed to provide Plaintiffs with any information that might aid Mr. Houser in calculating the percentage of business revenue that ALHHAC would have captured absent Defendants' wrongful conduct.  Throughout discovery, Plaintiffs requested information relevant to a specific calculation of the damages caused by Defendants' conduct. Defendants, however, were either unable to provide such information (often in

violation of the applicable records retention policy), or they simply chose to withhold the information.[4]

"[A] wrongdoer cannot escape liability simply because the harm he caused is difficult to value." <u>Burger King Corp. v. Mason</u>, 710 F.2d 1480, 1493 (11th Cir. 1983).  Indeed, "the plaintiff is held to a lower burden of proof in ascertaining the exact amount of damages because, '[t]he most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created.'" <u>Broan Mfg. Co., Inc. v. Associated Distributors, Inc.</u>, 923 F.2d 1232, 1236 (6th Cir. 1991) citing <u>Bigelow v. RKO Radio Pictures, Inc.</u>, 327 U.S. 251, 265 (1946).  If Plaintiffs' expert has failed to make calculations with the highest precision, then the blame

---

[4]Plaintiffs have provided the Court with a lengthy list cataloging various items that Plaintiffs requested but which Defendants refused to produce.  For example, Defendants claim that they do not possess customer retention or renewal rates.  Nor do they know the number of warranty calls versus service calls that Peachtree Service Experts received.  They do not know the names of customers resulting from their own promotional mailing campaigns.  They provide no information regarding customers who sought service through the andylweishobson.com website.  They provide no information about customers who sought service by calling Defendant's phone number which they listed as Andy Lewis Hobson's in the phone book.  They consistently deny that they possess any information that could aid Plaintiff's expert in separating revenue derived from infringing conduct from revenue derived from non-infringing conduct.  The Court finds it suspicious that Defendants would fail to maintain or produce any of this information.

clearly lies with Defendants.  Their failure to keep records and their reluctance to provide Plaintiffs with relevant information made a perfectly precise calculation of damages impossible.  Defendants cannot now complain that this supposed deficiency renders Mr. Houser's calculations inadmissible.

Furthermore, the Lanham Act bestows wide discretion on trial courts in the determination of a just amount of damages for trademark infringement.  See 15 U.S.C. § 1117.  In trademark cases, courts draw a distinction between proof of the fact of damage and proof of the amount of damage.  See Broan, 923 F.2d at 1235.  "Once the existence of damages has been shown, all that an award of damages requires is substantial evidence in the record to permit a factfinder to draw reasonable inferences and make a fair and reasonable assessment of the amount of damages."  Grantham and Mann Inc. v American Safety Products, Inc., 831 F.2d 596, 602 (6th Cir. 1987).  As the Eleventh Circuit has stated,

> Lanham Act damages may be awarded even when they are not susceptible to precise calculations. Where the wrong is of such a nature as to preclude exact ascertainment of the amount of damages, plaintiff may recover upon a showing of the extent of damages as a matter of just and reasonable inference, although the result may be only an approximation. The wrongdoer may not complain of inexactness where his actions preclude precise computation of the

20

> extent of the injury.  '[D]amages are not rendered
> uncertain because they cannot be calculated with
> absolute exactness.  It is sufficient if a reasonable
> basis of computation is afforded.'

Ramada Inns, Inc. V. Gadsden Motel Co., 804 F.2d 1562, 1565 (11th Cir. 1986)

(internal citations omitted).  The Court concludes that a jury can easily draw

reasonable inferences and make a calculation of damages based on the

testimony of Mr. Houser and other evidence in the record.

Once a plaintiff has proven the existence of damages, it is up to the

infringer to show that the amount should be apportioned to represent only the

damages caused by the wrongful activity.  As the Supreme Court has stated,

> The plaintiff of course is not entitled to profits
> demonstrably not attributable to the unlawful use of
> his mark.  The burden is the infringer's to prove that
> his infringement had no cash value in sales made by
> him.  If he does not do so, the profits made on sales of
> goods bearing the infringing mark properly belong to
> the owner of the mark.  There may well be a windfall
> to the trade-mark owner where it is impossible to
> isolate the profits which are attributed to the use of the
> infringing mark.  But to hold otherwise would give
> the windfall to the wrongdoer.  In the absence of his
> proving the contrary, it promotes honesty and
> comports with experience to assume that the
> wrongdoer who makes profits from the sales of goods
> bearing a mark belonging to another was enabled to

21

> do so because he was drawing upon the good will
> generated by that mark.

Mishawaka Rubber & Woolen Mfg. Co. V. S.S. Kresge Co., 316 U.S. 203, 207

(1942).  For these reasons, Mr. Houser's testimony regarding lost profits and

unjust enrichment will not be excluded. His methods are reliable and his

opinions are relevant to the issue of damages.[5]

### 2. Diminution in Value of Business

Next, Defendants attack the methodology Mr. Houser employed in

calculating the diminished value of ALHHAC LLC.  Mr. Houser attempted to

calculate how much the owner of the LLC membership interest lost as a result

of Defendants' conduct.  He compared the value of ALHHAC as it exists now

(the "as is" value) to the expected value that ALHHAC would have had absent

---

[5] Defendants mistakenly cite this Court's decision in KEG Technologies, Inc. v. Laimer, 436 F.Supp. 2d 1364 (N.D. Ga. 2006) in support of their contention that a high level of certainty must be achieved in order to be awarded lost profits damages. However, that case is inapposite as it involved a determination of damages for patent infringement, not trademark infringement.  An award of lost profits for patent infringement is subject to a different legal standard than an award of lost profits for trademark infringement.  Patentees are required to reconstruct the market to determine what profits the patentee would have made had the market developed absent the infringing product. Id. at 1369.  Trademark owners are not held to such a high standard.  Under the Lanham Act, they need merely prove the defendant's sales; it is then incumbent upon the defendant to establish any costs or deductions claimed. 15 U.S.C. § 1117.

Defendants' wrongful conduct (the "but for" value).  He determined that

ALHHAC had a gross margin for 2005 that was 1.12% less than it would have

been had Defendants acted in accordance with the Purchase Agreement.  This

diminution translates to $142,734 in lost net income for business involving

residential new construction.  Mr. Houser then compiled a summary of actual

and projected net income amounts.  Using these figures, Mr. Houser determined

that the value of ALHHAC would have been $1,800,000 if Defendants' conduct

had been proper.

Plaintiffs cite this Court's decision in Int'l Indem. Co. v. Reg'l Employer

Svc., Inc., 239 Ga. App. 420, 520 S.E.2d 533 (1999) in support of their

contention that the "but-for" method of calculating diminished value is widely

accepted in Georgia courts.  However, a closer reading of that case reveals

otherwise.  Under Georgia law, the measure of damages for a diminution in the

value of a business is the difference in the market value of the business before

and after the occurrence of the injury.  Int'l Indem. Co., 239 Ga. App. at 422;

Metropolitan Atlanta Rapid Transit Authority v. Martin, 193 Ga. App. 566, 568,

388 S.E.2d 346, 348 (1989).  In contrast, Plaintiffs' expert calculates the

difference between the value of the business after the injury and the *projected*

23

value of the business as it *would have existed today* if no injury had occurred.[6]

The resulting figure is quite different than the one representing an appropriate

measure of damages under Georgia law.  Mr. Houser's methodology does not

comport with Georgia law and would not assist the trier of fact in reaching the

correct measure of the diminution in value of ALHHAC.  Therefore, his

testimony on this point shall be excluded.

### 3. Punitive Damages

Finally, Defendants argue that Mr. Houser is not qualified to provide an

opinion on punitive damages because it would invade the province of the jury.

Mr. Houser estimated an amount of punitive damages which would have a

deterrent effect on Defendants without impairing their ability to conduct regular

business.  After examining the financial worth of Peachtree Service Experts,

LLC and Service Experts, Inc., Mr. Houser estimated that a $4,500,000 award

would be appropriate.

---

[6] This calculation is problematic for a variety of reasons.  For instance, the projected figure includes the estimated lost profits that the business has suffered since the alleged injuries occurred.  If the Court were to accept this calculation, Plaintiffs would essentially recovery their lost profits twice–once as "lost profits" and again under the guise of "diminution in value of the business."  Such a double-recovery does not comport with Georgia law or public policy.

The Court agrees with Defendants that allowing an expert opinion on the amount of punitive damages is improper.  The amount of punitive damages is to be determined by the enlightened conscience of an impartial jury.  <u>Smith v. Miliken</u>, 247 Ga. 369, 371, 276 S.E.2d 35, 37-38 (1981).  An expert opinion on this matter "is neither desirable nor necessary, and indeed, would invade the sacrosanct role of the jury."  <u>Voilas v. General Motors Corp.</u>, 73 F. Supp. 2d 452, 468 (D.N.J. 1999).  For these reasons, Mr. Houser's opinions regarding punitive damages will be excluded.

In conclusion, Defendants' Motion to Exclude the Opinions and Testimony of John D. Houser is **GRANTED in part and DENIED in part**.  Mr. Houser's opinions and testimony on the diminution in value of ALHHAC and on the issue of punitive damages shall be excluded, but his testimony on the subjects of lost profits and unjust enrichment is appropriate and shall not be excluded.

## IV. Defendants' Motion for Summary Judgment

### A.    Summary Judgment Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be

granted "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  FED. R. CIV. P. 56(c).  "The moving party bears

'the initial responsibility of informing the . . . court of the basis for its motion,

and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact.'"

Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004)

(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations

omitted)).  Where the moving party makes such a showing, the burden shifts to

the non-movant, who must go beyond the pleadings and present affirmative

evidence to show that a genuine issue of material fact does exist.  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  The applicable substantive law

identifies which facts are material.  Id. at 248.  A fact is not material if a dispute

over that fact will not affect the outcome of the suit under the governing law.

Id.  An issue is genuine when the evidence is such that a reasonable jury could

return a verdict for the non-moving party.  Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  But, the court is bound only to draw those inferences which are reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (stating that once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").  With this standard as a foundation, the Court turns to address the merits of Defendants' Motion for Summary Judgment.

**B.    Damages**

First, Defendants argue that several of Plaintiffs' claims fail because

there is insufficient proof of damages.  This argument is discussed below with regard to each claim.

1. Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing

With regard to Plaintiff's claim for breach of contract, Defendants argue that summary judgment should be granted because Plaintiffs have failed to prove damages.  However, a plaintiff need not prove monetary damages to survive summary judgment on a breach of contract claim, as nominal damages are available for any breach.  See O.C.G.A. § 13-6-6 ("In every case of breach of contract the injured party has a right to damages, but if there has been no actual damage, the injured party may recover nominal damages . . ."); Poe v. Sears Roebuck & Co., 1 F.Supp. 2d 1472, 1477 (N.D. Ga. 1998) ("[S]ummary judgment on [a] contract claim for the failure to prove damages is not appropriate.").  For this reason, summary judgment is not appropriate for these claims.

2. Violation of the Georgia Uniform Deceptive Trade Practices Act

Defendants also urge that Plaintiffs' claim under the Georgia Uniform Deceptive Trade Practices Act (GUDTPA) fails due to Plaintiffs' failure to

28

prove damages.  It is true that no proof of monetary damages is required to

bring a successful claim under the GUDTPA.[7]  O.C.G.A. § 10-1-373(a) ("Proof

of monetary damage, loss of profits or intent to deceive is not required.").

However, only injunctive relief is permitted under the statute.  O.C.G.A. § 10-1-

373.  Georgia courts have consistently held that monetary damages are not awarded

under the GUDTPA.  Akron Pest Control v. Radar Exterminating Co., Inc., 216 Ga.

App. 495, 498, 455 S.E.2d 601, 603 (1995) (citing Magliaro v. Lewis, 203 Ga. App.

632, 634-35, 417 S.E.2d 395 (1992)) ("It is well established that monetary relief is not

authorized under the Uniform Deceptive Trade Practices Act.").  The Act does not

preclude other actions based on common law or other statutory authority.  O.C.G.A. §

10-1-372(c) ("The relief provided in this Code section is in addition to remedies

otherwise available against the same conduct under the common law or other statutes

of this state.").  Therefore, to the extent that Plaintiffs seek monetary damages

under the statute, the Court concludes that summary judgment is appropriate.

But to the extent that Plaintiffs seek injunctive relief, the Court declines to grant

summary judgment on Plaintiffs' GUDTPA claim.

---

[7] While in their Complaint Plaintiffs seek only equitable relief under this statute, they argue in their brief for monetary damages.  (See Pl.'s Compl. Dkt. No. [1] at ¶ 44; Pl.'s Br. in Opp. to Def.'s Mot. for Summ. J. Dkt No. [171] at 15.)

AO 72A
(Rev.8/82)

### 3. Trade Name Infringement, Unfair Competition, False Representation, and False Designations of Origin,

With regard to Plaintiffs' infringement and unfair competition claims, Defendants argue that Plaintiffs have failed to provide sufficient proof of any damages that were caused by Defendants' conduct.  However, as discussed above,[8] Plaintiffs' expert witness provides ample evidence of Plaintiffs' monetary damages.  Therefore, the Court declines to grant summary judgment on these claims.

**C.    Tortious Interference**

Plaintiffs also assert a claim for tortious interference with business relations, alleging that Defendants injured ALHHAC's potential relationships with service customers.  Defendants argue in their motion for summary judgment that Plaintiffs' tortious interference claim fails because Defendants were not "strangers" to the potential business relationships.

To recover under a theory of tortious interference with business relations, a party must demonstrate that its opponent was a "stranger" to the prospective relations.  See Atlanta Mkt. Ctr. v. McLane, 269 Ga. 604, 608, 503 S.E.2d 278,

---

[8] See supra Section III. Defendant's Motion to Exclude.

283 (1998).  If a party is "(1) an essential entity to the purported injured

relations; or (2) the allegedly injured relations are inextricably a part of or

dependent upon the party's contractual or business relations; or (3) the party

would benefit economically from the alleged injured relations; or (4) both the

party and the person claiming injury are parties to a comprehensive, interwoven

set of contracts or relations," then that party is not a stranger to the injured

relations and therefore cannot tortiously interfere as a matter of law.  Britt/Paulk

Ins. Agency, Inc. v. Vandroff Ins. Agency, Inc., 952 F.Supp. 1575, 1584 (N.D.

Ga. 1996).

     Here, Defendants were not "strangers" to the business relations between

ALHHAC and the service customers.  Defendants are essential entities to the

allegedly injured relationship.  Indeed, prior to the sale of ALHHAC, repair and

replacement customer inquiries were referred to Service Experts of Atlanta, a

trade name which Defendants reserved in the Purchase Agreement.

Furthermore, Defendants are certainly interwoven into a set of contracts and

relationships involving Plaintiffs and the service customers of ALHHAC.

Defendants actually performed work under contracts between ALHHAC and

their service customers, and they reserved certain rights with regard to existing

31

customers in the Purchase Agreement.  For these reasons, the Court concludes that Defendants were not "strangers" to the business relations with which Plaintiffs claim they interfered.  Accordingly, the Court is inclined to grant summary judgement with regard to Plaintiffs' tortious interference claim.

### D.    Conspiracy

Plaintiffs' claim for conspiracy is premised on their claim for tortious interference with business relations.  In light of the Court's determination that Plaintiffs' tortious interference claim is unmeritorious, Plaintiffs' claim for conspiracy fails as well.  The Court concludes that summary judgment shall be granted on this claim.

### E.    Defendants' Counter-Claim for Breach of Contract

Defendants also move for summary judgment on their counterclaim for breach of contract.  They argue that Plaintiffs failed to properly object to the calculation of the Actual Working Capital Amount owed to Defendants under the terms of the contract.  They claim that the letter lacked a specific objection to the way in which the Actual Working Capital Amount was calculated.  In response, Plaintiffs claim that the Objection Notice was proper and that it lacked detail because of Defendants' failure to provide them with any

32

accounting assistance as required by the contract.  Plaintiffs further argue that

they do not owe the Actual Working Capital Amount because Defendants failed

to respond to the Objection Notice by appointing a certified public accountant

to review and finalize the Purchase Price Adjustment calculations, as directed

by the contract.  The Court concludes that genuine issues of material fact exist

as to whether Plaintiffs' conduct constitutes a breach of the contract; therefore,

summary judgment is not appropriate on this claim.

### F.      Conclusion

For the reasons stated above, Defendants' Motion for Summary

Judgment is hereby **GRANTED in part and DENIED in part**.  Plaintiffs'

claims for conspiracy and for tortious interference with business relations are

dismissed, but all other claims shall go forward.


## V. Motion for Leave to File Sur-Reply Brief

Plaintiffs' Motion for Leave to File a Sur-Reply Brief in Further

Opposition to Defendants' Motion for Summary Judgment is hereby

**GRANTED** *nunc pro tunc*.

33

AO 72A
(Rev.8/82)

## VI.    Motion to Withdraw as Attorney

Also before the Court is a motion to withdraw filed by Alex J. Simmons, Jr. who wishes to withdraw as counsel for Plaintiffs in these two related cases. Mr. Simmons having complied with the Local Rules and his withdrawal not prejudicing Plaintiffs or delaying the proceedings, the Court hereby **GRANTS** the motion to withdraw.

### Conclusion

With regard to Case No. 1:06-CV-00357-RWS, Plaintiff's Motion to Compel Compliance with Subpoenas [122] is hereby **DENIED**, Plaintiff's Motion to Strike Portions of Errata Sheet of Steven Michael Graham [138] is hereby **DENIED**, Defendants' Motion to Exclude the Opinions and Testimony of John D. Houser [130] is hereby **GRANTED in part and DENIED in part**, Plaintiff's Motion for Leave to File Sur-Reply Brief in Further Opposition to Defendants' Motion for Summary Judgment [137] is hereby **GRANTED**, Defendants' Motion for Summary Judgment [191] is hereby **GRANTED in part and DENIED in part**, and the Motion to Withdraw Alexander Jackson Simmons, Jr. as Attorney [180] is hereby **GRANTED**.

34

With regard to Case No. 1:06-CV-00358-RWS, Plaintiff's Motion to Compel Compliance with Subpoenas [118] is hereby **DENIED**, Plaintiff's Motion to Strike Portions of Errata Sheet of Steven Michael Graham [126] is hereby **DENIED**, Defendants' Motion to Exclude the Opinions and Testimony of John D. Houser [123] is hereby **GRANTED in part and DENIED in part**, Plaintiff's Motion for Leave to File Sur-Reply Brief in Further Opposition to Defendants' Motion for Summary Judgment [176] is hereby **GRANTED**, Defendants' Motion for Summary Judgment [125] is hereby **GRANTED in part and DENIED in part**, and the Motion to Withdraw Alexander Jackson Simmons, Jr. as Attorney [180] is hereby **GRANTED**.

**SO ORDERED**, this   6th   day of December, 2007.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

35